UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| **Williene Sistrunk** | **Plaintiff** |
| v. | No. 3:20-cv-406-BJB-CHL |
| **City of Hillview, et al.** | **Defendants** |

\* \* \* \* \*

**M<sub>EMORANDUM</sub> O<sub>PINION AND</sub> O<sub>RDER</sub>**

Williene Sistrunk, an 86-year-old African-American woman, lives in Louisville's West End. She filed this lawsuit against two named police officers, additional unnamed officers, the City of Hillview, and Louisville Metro Government, asserting they violated her federal and state-law rights in May 2019. The officers, Sistrunk alleges, raided her home while she was in bed: they forced her, shoeless and wearing only her undergarments, out of her home and into public view. They damaged and removed her property. And they did so, according to Sistrunk, without a warrant or probable cause—in hopes of finding Sistrunk's grandson, who has never lived with her. Complaint (DN 1-2) ¶¶ 13–16.

At this early stage of the lawsuit, courts must accept a plaintiff's factual allegations as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The officers and Hillview have filed an answer largely denying Sistrunk's accusations, and the case will proceed to discovery with respect to those defendants.

The remaining named defendant, Louisville Metro, filed a motion to dismiss the claims against it. DN 4. Louisville Metro is correct that the Complaint's minimal factual allegations about the government's own conduct, measured against what the law requires to establish municipal liability, do not state a valid claim. So the Court must dismiss the Complaint against Louisville Metro. But the dismissal is without prejudice, meaning Sistrunk will have the opportunity to attempt to replead her allegations consistent with the legal standards discussed below.

**A. Municipal liability.** Sistrunk's claims against Louisville Metro seek to hold the government responsible for its officers' actions at her house. The Complaint alleges that Louisville Metro is responsible for the search of Sistrunk's house because it maintains a custom of unconstitutional searches based on its failure to adequately train officers in obtaining and executing search and arrest warrants.

Sistrunk sued Louisville Metro under a federal statute authorizing a lawsuit against any "person" who, under color of law, "subjects" someone else ("or causes [someone else] to be

subjected") to the violation of her constitutional or other federal rights. 42 U.S.C. § 1983.[1] The "person" may be a city. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) ("Local governing bodies, therefore, can be sued directly under § 1983 ….") (footnote omitted).

The Supreme Court has recognized, however, that a municipal government is not automatically liable for "an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694; *id.* at 691 ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor.") (emphasis in original); *see also Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006) (no vicarious liability for constitutional violations committed by city employees).

Instead, the municipality may be liable only if the government itself is to blame for the unconstitutional acts—that is, if it adopted or ratified a policy or custom that caused the harm inflicted by its officers or employees. *Monell*, 436 U.S. at 694 ("the government as an entity is responsible under § 1983" only "when execution of a government's policy or custom … inflicts the injury"). Congress did not render municipalities liable, in other words, "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 691.

Proving this requires a plaintiff to "point to a municipal 'policy or custom' and show that it was the 'moving force' behind the constitutional violation." *Crabbs v. Scott*, 800 F. App'x 332, 336 (6th Cir. 2020) (quoting *Monell*, 436 U.S. at 694). The pleadings must set forth the specific policy or custom allegedly adopted by the government. A plaintiff may do so by pointing to "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Jones v. Clark County*, 959 F.3d 748, 761 (6th Cir. 2020) (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

**B. Complaint.** Sistrunk's Complaint, as set forth below, addresses Louisville Metro's alleged liability only briefly. These allegations are best read to invoke the third category of *Monell* violations: a policy of inadequate training. The Sixth Circuit has described what the law requires to set forth such a claim:

> "In order to show that a municipality is liable for a failure to train its employees, a plaintiff 'must establish that: (1) the City's training program was inadequate for the tasks that officers must perform; (2) the inadequacy was the result of the City's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury.'"

*Jackson v. City of Cleveland*, 925 F.3d 793, 834 (6th Cir. 2019) (quoting *Ciminillo v. Streicher*, 434 F.3d 461, 469 (6th Cir. 2006)).

---

[1] 42 U.S.C. § 1983 states that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

The sum total of the Complaint's allegations on this point are found at paragraphs 32–35:

32. Upon information and belief, Hillview and Metro's policy or custom regarding obtaining and/or executing search warrants deprived Plaintiff of her Fourth Amendment rights to be protected from unreasonable searches and seizures.

33. Upon information and belief, Hillview and Metro fails to adequately train its officers regarding obtaining search warrants in order to protect citizens' Fourth Amendment rights to be protected from unreasonable searches and seizures.

34. Upon information and belief, Hillview and Metro fails to adequately train its officers regarding executing search and/or arrest warrants in order to protect citizens' Fourth Amendment rights to be protected from unreasonable searches and seizures.

35. Metro is deliberately indifferent to the known or obvious consequences of its policies and customs.

These paragraphs contain legal conclusions, not factual allegations. Bare-bones assertions of liability offer no basis on which the Court could infer that Louisville Metro's training (or lack thereof) violated the Constitution. "Stripped of legal language," *Birgs v. City of Memphis*, 686 F. Supp. 2d. 776, 780 (W.D. Tenn. 2010), the Complaint cannot satisfy § 1983's requirements as the Supreme Court has interpreted the statute. The Complaint offers no facts indicating that Louisville Metro's training is inadequate, much less that Louisville Metro showed deliberate indifference toward any such inadequacies, or still further that any alleged indifference was closely related to or actually caused the constitutional violation. *See Jackson*, 925 F.3d at 834; *cf. Birgs*, 686 F. Supp. 2d. at 780 (granting motion to dismiss because a failure-to-train complaint failed to plead "more than conclusory statements" (citing *Iqbal*, 556 U.S. at 678)); *Cooper v. Rhea County*, 302 F.R.D. 195, 201 (E.D. Tenn. 2014) (same). Although a complaint must provide only "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief," Fed. R. Civ. P. 8(a)(2), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678.

**1. Inadequate training.** To show the first element of a failure-to-train claim, allegations must focus on the "adequacy of the training program in relation to the tasks the particular officers must perform." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). This Complaint contains no such factual allegations. The Sixth Circuit has recognized that the type of "conclusory allegations or legal conclusions" Sistrunk *does* offer will not suffice. *Verble v. Morgan Stanley Smith Barney*, 676 F. App'x 421, 424 (6th Cir. 2017) (quoting *Bright v. Gallia County*, 753 F.3d 639, 652 (6th Cir. 2014)); *see also Sweat v. Butler*, 90 F. Supp. 3d 773, 778 (W.D. Tenn. 2015).

**2. Deliberate indifference.** Equally lacking are Sistrunk's allegations regarding the second element: deliberate indifference. This imposes "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his actions." *Bd. of Cty. Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 410 (1997). In other words, a pleading must indicate a "risk of a constitutional violation arising as a result of" the inadequate training that is "plainly obvious." *Gregory*, 444 F.3d at 752. To make that showing, a plaintiff must allege either "prior instances of unconstitutional conduct demonstrating that the City had notice that the training was deficient and likely to cause injury but ignored it," or else "evidence of a single violation of federal rights,

accompanied by a showing that the City had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Campbell v. City of Springboro*, 700 F.3d 779, 794 (6th Cir. 2012).

Sistrunk alleges deliberate indifference in a single sentence: "Metro is deliberately indifferent to the known or obvious consequences of its policies and customs." Complaint ¶ 35. This conclusory allegation fails to identify either 1) prior instances of unconstitutional conduct that put the government on notice, or 2) a single violation stemming from an obvious potential for recurrence. *See Campbell*, 700 F.3d at 794; *Connick v. Thompson*, 563 U.S. 51, 61–68 (2011).

*First*, the Complaint fails to allege "prior instances of unconstitutional conduct demonstrating that [Louisville Metro] had notice that the training was deficient and likely to cause injury but ignored it." *Jackson*, 925 F.3d at 835 (quoting *Campbell*, 700 F.3d at 794). "A pattern of similar constitutional violations by untrained employees," the Supreme Court has held, "is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (quoting *Bryan County*, 520 U.S. at 409). Absence of such allegations often proves fatal to a failure-to-train claim. *See Spainhoward v. White County*, 421 F. Supp. 3d 524, 544–46 (M.D. Tenn. 2019) (collecting cases showing that "boilerplate allegations premised on a single incident" of a constitutional violation at the hands of policy "are insufficient to state a municipal liability claim, thereby justifying dismissal under Rule 12(b)(6).") (quoting *Minick v. Metro. Gov't of Nashville*, No. 3:12-cv-524, 2014 WL 3817116, at *2 (M.D. Tenn. Aug. 4, 2014)); *see also Karsner v. Hardin County*, No. 3:20-cv-125, 2021 WL 886233, at *14 (March 9, 2021) (dismissing claim that failed to allege that the government officials "had a pattern of committing similar unconstitutional violations").

*Second*, the Complaint lacks any allegations that Louisville Metro's actions in this case fall within the "narrow range of circumstances," *Connick*, 563 U.S. at 63, in which a "single violation of federal rights, accompanied by a showing that the [municipality] had failed to train its employees to handle recurring situations[,] presen[t] an obvious potential for such a violation," *Jackson*, 925 F.3d at 835 (quoting *Campbell*, 700 F.3d at 794). To state a failure-to-train claim based on a theory of "single incident" liability, Sistrunk must "allege 'a complete failure to train the [officers], training that is so reckless or grossly negligent that future … misconduct is almost inevitable or would properly be characterized as substantially certain to result.'" *Karsner*, 2021 WL 886233, at *15 (quoting *Harvey v. Campbell County*, 453 F. App'x 557, 567 (6th Cir. 2011)).

**3. Relatedness and causation.** Finally, a failure-to-train claim requires that the government's shortcomings were "closely related to or actually caused the [plaintiff's] injury." *See Jackson*, 925 F.3d at 834. The Complaint's bare assertion that Louisville Metro's policy or custom "deprived" Sistrunk of her Fourth Amendment rights is not enough. *See Ransom v. Louisville–Jefferson County Metro. Gov't*, No. 3:19-cv-631, 2020 WL 5944283, at *6 (W.D. Ky. Oct. 7, 2020) (granting motion to dismiss because the plaintiff did not "plausibly alleg[e] that Louisville Metro's deliberate indifference 'created a training regimen so deficient that it was the actual *cause* of' Defendant Officers' unconstitutional conduct") (quoting *Harvey*, 453 F. App'x at 567).

Other courts here and elsewhere have dismissed claims on the same basis. A "[p]laintiff may not simply include a *Monell* claim in h[er] Complaint as a matter of course by making the conclusory allegation that the alleged constitutional deprivations were due to a policy or custom of the [municipality]. Rather, Plaintiff must allege some actual facts suggesting as much." *Grandizio v. Smith*, No. 14-3868, 2015 WL 58403, at *6 (D.N.J. Jan. 5, 2015); *accord Anthony v. Roberson*,

26 F. App'x 419, 422 (6th Cir. 2001) ("conclusory allegations are insufficient to state an arguable claim that an unconstitutional governmental policy caused Anthony's illegal arrest"); *Brown v. Cuyahoga County*, 517 F. App'x 431, 436 (6th Cir. 2013) (affirming dismissal of *Monell* claim based on "nothing more than a bare recitation of legal standards").

\* \* \*

When stripped of the legal conclusions, the Complaint "contains no factual content" indicating "what these policies or customs regarding training and supervision were, why they were inadequate, and how they contributed to the [alleged] violation of [the plaintiff's] constitutional rights." So the law requires a trial court to dismiss the claim. *Phillips v. PTS of Am., LLC*, No. 3:17-cv-603, 2017 WL 4582801, at \*2 (W.D. Ky. Oct. 13, 2017).[2] Absent factual allegations supporting inadequate training, deliberate indifference, and a causal relationship, the law does not allow a plaintiff to subject the government to litigation and discovery merely by asserting that a policy or custom exists. The Complaint's spare and conclusory allegations are therefore insufficient to state a claim. *See Iqbal*, 556 U.S. at 678.

**C. Opposition brief.** Perhaps recognizing the vulnerabilities of her pleadings, Sistrunk's response to the government's motion raises new arguments regarding municipal conduct. She asserts that Louisville Metro's "policy or custom is to raid homes (particularly those in poor communities) with approximately 15 S.W.A.T. team members with military weaponry, including assault rifles and exploding devices, regardless of probability of cause, the reason for the search warrant, or the level of danger presented to L.M.P.D. officers." Response (DN 7) at 1. Louisville Metro, according to the brief, also "fails to train its officers regarding obtaining probable cause and … the level of force used in executing the warrant." *Id.* at 1–2.

As an initial matter, Sistrunk cannot rely on new assertions in a brief that have not been pled in a complaint. "As a general rule, a court considering a motion to dismiss 'must focus only on the allegations in the pleadings.' This does not include plaintiffs' responses to a motion to dismiss." *Waskul v. Washtenaw Cty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020) (quoting *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020)). Such arguments cannot sustain a complaint against a motion to dismiss. *See, e.g.*, *Ryan v. Blackwell*, No. 5:19-188, 2019 WL 6119212, at \*5 (E.D. Ky. Nov. 18, 2019), *aff'd,* 979 F.3d 519 (6th Cir. 2020) ("Plaintiff cannot use his response to fortify the otherwise deficient factual content of his complaint against the motion to dismiss."). This omission offers a valid and independent basis for rejecting the arguments belatedly offered in the response brief.

---

[2] Having considered Sistrunk's allegations under the rubric of a failure-to-train claim, it is worth pausing to note an additional type of Fourth Amendment claim that Sistrunk *might* have intended to raise. Paragraph 32 of the Complaint states that Louisville Metro adhered to a "policy or custom regarding obtaining and/or executing search warrants" that violated "her Fourth Amendment rights to be protected from unreasonable searches and seizures." Complaint ¶ 32. This is not best read as a "standalone" claim, because the pleadings go on to specify the *type* of Fourth Amendment claim she alleges: one based on inadequate training. But to the extent Sistrunk meant to raise a separate claim alongside it, paragraph 32's single-sentence allegation would fail for the same basic reason: it offers a conclusory legal assertion unsupported by any factual allegations. *See, e.g.*, *Iqbal*, 556 U.S. at 678. Alleging that a municipality actually follows an unspecified "policy" or "custom" of violating the Constitution, moreover, requires far more than Sistrunk attempted to show here, as discussed in the following section.

Nor would the Court have a solid basis to conclude that the isolated assertions in the opposition brief, even if properly pled, would show a "policy" or a "custom" of unconstitutional action.

**1. Policy.** Sistrunk has not stated a *Monell* claim based on an unconstitutional "policy" because she has failed to "show that there were 'formal rules or understandings—*often but not always committed to writing*—that [are] intended to, and [do], establish fixed plans of actions to be followed under similar circumstances consistently and over time." *Jackson*, 925 F.3d at 793 (emphasis in original). Neither the Complaint nor the brief provide factual support that would allow the Court to conclude that Louisville Metro in fact has a "formal" or "fixed" policy of using S.W.A.T. teams to raid homes in poor neighborhoods.

The brief asserts that Louisville Metro "fails to train its officers regarding obtaining probable cause and … the level of force used in executing the warrant." Response at 1–2. It contends that this amounts to a "policy," but does not allege facts supporting the existence of any such policy. *Id.* Nor does this conclusory assertion explain how any such policy indicates deliberate indifference or a causal relationship between the municipal action and the violation of Sistrunk's rights in particular. *See* Part B above (discussing the pleading requirements for a failure-to-train claim).

Other courts in this district and elsewhere within the Sixth Circuit have dismissed claims on this basis. A plaintiff's "conclusory allegations that the defendants had an unlawful policy, unaccompanied by supporting factual allegations, 'are not entitled to the assumption of truth,' and do not state a plausible claim for relief." *Taylor v. Brandon*, No. 3:14-cv-588, 2016 WL 258644, at *3 (W.D. Ky. Jan. 20, 2016) (dismissing official-policy claims) (quoting *Iqbal*, 556 U.S. at 679); *see also Klotz v. Shular*, No. 3:14-cv-723, 2015 WL 4556267, at *7 (W.D. Ky. July 28, 2015) (dismissing *Monell* claims that failed to plead facts supporting illegal-policy claim); *Hutchison v. Metro. Gov't of Nashville*, 685 F. Supp. 2d 747, 751 (M.D. Tenn. 2010) (dismissing claim that allege specific unconstitutional policy or practice "without additional factual assertions of any kind"). Sistrunk's unsupported references to an unconstitutional policy—both in the response brief and paragraphs 32–35 of the Complaint—fare no better.

**2. Custom.** Sistrunk's new assertions also would fail to state a *Monell* "custom" claim. To do so, a complaint "must show that [Louisville Metro] has (1) an unwritten custom (2) of remaining deliberately indifferent (3) to a clear and persistent pattern of illegal uses of force and seizures (4) that it knew or should have known about." *Spainhoward*, 421 F. Supp. 3d at 543 (quoting *Okolo v. Metro. Gov't of Nashville*, 892 F. Supp. 2d 931, 941–42 (M.D. Tenn. 2012)); *see also Thomas*, 398 F.3d at 429. "A municipal 'custom' may be established by proof of the knowledge of policymaking officials and their acquiescence in the established practice." *Miller v. Calhoun County*, 408 F.3d 803, 814 (6th Cir. 2005) (quoting *Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004)). And a "custom" exists only if it carries "the force of law"—that is, a pattern that is "so permanent and well settled as to constitute a custom or usage with the force of law." *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 403 (6th Cir. 2010); *Brown*, 520 U.S. at 404 ("an act performed pursuant to a 'custom'" may trigger municipal liability if the practice "is so widespread as to have the force of law").

The "pattern" requirement of course implies repetition of similar events. *See Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) ("a custom … claim requires a showing that there was a

6

pattern of … similar claims"). "Two incidents of unconstitutional searches over the course of five months," the Sixth Circuit has held, "d[o] not demonstrate behavior 'so permanent and well settled as to constitute a custom or usage with the force of law.'" *Beard v. Whitmore Lake Sch. Dist.*, 244 F. App'x 607, 613 n.3 (6th Cir. 2007) (quoting *Monell*, 436 U.S. at 691). And only "one instance of potential misconduct" does not amount to a custom. *Thomas*, 398 F.3d at 433 (allegation of a custom condoning unconstitutional conduct requires more than "one instance of potential misconduct"); *see also Colson v. City of Alcoa*, 458 F. Supp. 3d 887, 930 (E.D. Tenn. 2020) ("A municipal policy or custom cannot be shown by one instance of misconduct.") (citing *Thomas*, 398 F.3d at 432–33); *Butts v. City of Bowling Green*, 374 F. Supp. 2d 532, 539 (W.D. Ky. 2005) ("one incident does not show that the Bowling Green Police Department had notice of this type of alleged illegal activity").

Although the opposition brief mentions three incidents besides her own, none show any failure to train that is similar, repetitive, or customary. Therefore none push Sistrunk's claim beyond "possibility" and across the line to "plausibility." *Twombly*, 550 U.S. at 557.

Sistrunk's brief principally invokes *New v. Louisville Metro Government* for support. *See* No. 3:15-cv-653, 2016 WL 1268299 (W.D. Ky. Mar. 31, 2016). *New* involved a *Monell* claim against Louisville Metro regarding a specific city car-chase policy that prohibited "the pursuit of anyone other than a person who has committed or is wanted on a warrant for committing a violent felony." *Id.* at *1. The decision merely held that a complaint survived a motion to dismiss; it did not establish a constitutional violation by Louisville Metro. *Id.* at *3. That case, moreover, is factually unrelated: the plaintiff complained about police-car chases, not search warrants. *Id.* at *2. In any event, the *New* complaint included factual allegations about the municipal policy at issue that were far more factual and specific than those in Sistrunk's conclusory pleading. *Id.* at *3. Plainly, *New* does not demonstrate that Louisville Metro maintains a custom of unconstitutional home searches.

Sistrunk's response points to two other incidents. It cites another pending lawsuit, *Burr v. Louisville/Jefferson Cty. Metro Gov't*, No. 3:19-cv-790 (W.D. Ky.), and mentions, in passing, the search warrant connected to Breonna Taylor's death. The brief observes that "Metro's policies (and/or lack thereof) and customs regarding obtaining and executing search warrants have recently come under great public scrutiny," based on "the death of Breonna Taylor and other outrageous raids." Response at 1 (citing *Burr*). Again, however, Sistrunk offers no explanation regarding how either case shows a custom of deliberately inadequate training. The Taylor incident is mentioned only once, without any analysis whatsoever, and not in the context of officer training. The *Burr* lawsuit is similarly unexamined. There, the government defendants have denied the amended allegations, which the plaintiff filed after the court granted a motion to dismiss. Case No. 3:19-cv-790 (DN 15). The brief invokes the inchoate *Burr* lawsuit without explaining how its allegations relate to Sistrunk's, what evidence might support any allegations of unconstitutional activity, or why the existence of this lawsuit renders Sistrunk's allegations more plausible. *See* Response at 1, 5. Absent such attention, merely citing other pending lawsuits does not describe and cannot support a claim that Louisville Metro customarily fails to train officers regarding warrants. *See Packard v. City of New York*, 15 Civ. 7130, 2017 WL 11580887, at *6 (S.D.N.Y. March 2, 2017) (other lawsuits "do not plausibly support Plaintiffs' *Monell* claim" where "Plaintiffs d[id] not allege facts sufficient for the Court to infer that the other lawsuits involved similar factual circumstances as the instant matter" and did "'not draw upon the records of any of the [other] lawsuits' cited") (quoting *Calderon v. City of New York*, 138

Case 3:20-cv-00406-BJB-CHL   Document 11   Filed 04/23/21   Page 8 of 9 PageID #: 59

F. Supp. 3d 593, 614 (S.D.N.Y. 2015), *on reconsideration in part*, No. 14-cv-1082, 2015 WL 6143711 (S.D.N.Y. Oct. 19, 2015)).[3]

Finally, Sistrunk also argues that Louisville Metro's motion is premature, because discovery will show that Louisville Metro has a policy and custom to impose "S.W.A.T. raids in poorer neighborhoods." Response at 5–6. This begs the question: the law requires well-pled allegations *before* Sistrunk may proceed to discovery; it does not authorize discovery to help Sistrunk plead her case. *See In re Flying J Rebate Cont. Litig. (No. II)*, No. 14-2515, 2014 WL 3611299, at *2 (E.D. Ky. July 21, 2014) ("Either the plaintiffs can state plausible claims, and so commence discovery, or they cannot.").

None of this should diminish the seriousness of Sistrunk's claims against the defendants for the search of her home. Even though the Court is "mindful that the Complaint contains serious allegations concerning the conduct of on-duty police officers," Sistrunk's "allegations as to *the City's* role in that violation do not satisfy the high standard that is required for municipal liability under *Monell* and its progeny." *Khalil v. City of Paterson*, No. 18-3241, 2018 WL 6168191, at *7 (D.N.J. Nov. 26, 2018). Louisville Metro has not yet responded to Sistrunk's factual allegations, and this Order addresses only the question whether those allegations, if proved, would amount to legal violations this Court may redress. Her initial allegations do not support relief against Louisville

---

[3] Even assuming Sistrunk had identified a connection between the *Burr* lawsuit and hers, moreover, the parties have not addressed the legal effect of citing pending litigation in support of a *Monell* policy or custom claim. *See* Response at 1, 5; Reply [DN 8] at 3. Courts outside this circuit have expressed differing and sometimes tentative views on the question. *Calderon*, 138 F. Supp. 3d at 611–12 ("Courts considering *Monell* claims have assigned different levels of significance to the filing of prior lawsuits.").

Some have been skeptical. *See, e.g.*, *Bauer v. City & County of Denver*, 642 F. App'x 920, 925 (10th Cir. 2016) ("vague notions of pending lawsuits and a conclusory statement of the Sheriff's Department's customs fail to provide the factual allegations that withholding medical care was the City's pattern or practice" under *Monell*) (alterations adopted); *Kucharczyk v. Westchester County*, 95 F. Supp. 3d 529, 543 (S.D.N.Y. 2015) ("'The Second Circuit and the district courts within the Second Circuit have held that a plaintiff's citation to a few lawsuits involving claims of alleged constitutional violations is not probative of the existence of an underlying policy by a municipality or department of corrections. Some courts, however, have found that other lawsuits identified by a plaintiff that concern the same practice and policy at issue in the complaint permit a plausible inference of deliberate indifference.") (citations and quotation marks omitted) (collecting cases); *Pharaoh v. Dewees*, No. 14-cv-3116, 2016 WL 2593842, at *5 (E.D. Pa. May 4, 2016) ("[T]he fact that lawsuits against [the defendant] were filed, without more, indicates nothing, as people may file a complaint for many reasons, or for no reason at all, and evidence that they filed complaints does not indicate that the policies that [plaintiff] alleges exist do in fact exist.") (alteration adopted) (internal quotation marks omitted) (quoting *Strauss v. City of Chicago*, 760 F.2d 765, 769 (7th Cir. 1985)).

Other courts have at least left the door ajar. *See Brown v. Dart*, No. 14-cv-07945, 2015 WL 4035568, at *4 (N.D. Ill. June 30, 2015) ("Decisions in this District are split on whether allegations that other inmates have brought similar lawsuits can serve as the basis for a *Monell* claim."); *Gonzalez v. Borough of Red Bank*, No. 18-13009, 2020 WL 2029338, at *9 (D.N.J. April 28, 2020) ("evidence of other lawsuits filed against a municipality may only be relevant to a *Monell* claim where coupled with additional evidence that the municipality's efforts to evaluate the claims were so superficial as to suggest that its official attitude was one of indifference to the truth of the claim") (internal quotation marks omitted) (quoting *Peters v. City of Biloxi*, 57 F. Supp. 2d 366, 378 (S.D. Miss. 1999)).

Metro, though her case will continue against the other defendants, regardless of whether she seeks leave to amend her claim against Louisville Metro.

**D. Punitive damages and state-law claims.**  Sistrunk also asserts punitive-damages and state-law claims against Louisville Metro.  Those cannot survive for two straightforward reasons: the government is immune to both sorts of claims, and Sistrunk has not offered any argument in opposition to the motion to dismiss on these points.

The punitive-damages claim seeks to punish Louisville Metro's alleged tort and constitutional violations.  Complaint ¶ 36.  But the Supreme Court has made clear that punitive damages are unavailable against a municipality in a § 1983 suit.  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).  And "several courts in this circuit have considered this issue and found that a municipality, like Louisville Metro, is immune from punitive damages in state-law claims." *Daugherty v. Louisville-Jefferson Cty. Metro Gov't*, --- F. Supp. 3d ---, 2020 WL 6152371, at *3 (W.D. Ky. Oct. 20, 2020) (collecting cases).  Sistrunk, moreover, has not responded to Louisville Metro's assertion of immunity to punitive damages.  *See* Motion to Dismiss at 7; *Allstate v. Global Med. Billing*, 520 F. App'x 409, 412 (6th Cir. 2013) ("failure to respond to Defendants'" arguments in a motion to dismiss "amounts to waiver of the argument").  Because the punitive-damages claim is barred by precedent and by waiver, the Court dismisses this claim with prejudice.

Sistrunk further asserts several state-law claims alleging that Louisville Metro is strictly liable for conversion, trespass to chattel, negligence, and gross negligence.  *See* Complaint ¶¶ 20–23.  Louisville Metro correctly argues that sovereign immunity shields it from Sistrunk's state-law claims. *See* Motion to Dismiss at 3.  The Kentucky General Assembly has codified the sovereign immunity of a local government like Louisville Metro.  *See* Ky. Rev. Stat. § 67C.101(2)(e) ("A consolidated local government shall be accorded the same sovereign immunity granted counties, their agencies, officers, and employees."); *see also Albin v. Louisville Metro Gov't*, No. 3:19-cv-576, 2020 WL 1310495, at *3 (W.D. Ky. Mar. 19, 2020).  Sistrunk did not respond to the motion to dismiss on this point either, and therefore waived any opposition to the defense.  *See Allstate*, 520 F. App'x at 412.  Based on the caselaw and Sistrunk's waiver, the Court likewise dismisses Sistrunk's state-law claims against Louisville Metro with prejudice.

## ORDER

The Court grants Louisville Metro's motion to dismiss the *Monell* policy-or-custom claim without prejudice, and grants the motion to dismiss the punitive and state-law claims against Louisville Metro with prejudice.

Benjamin Beaton, District Judge
United States District Court

April 23, 2021

cc: counsel of record